UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

K.G.M.Q.,

                Petitioner,

      v.

PAMELA BONDI, et al.,

                Respondents.

CASE NO. 2:26-cv-00506-TL

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

This matter is before the Court on Petitioner K.G.M.Q.'s Petition for Writ of Habeas Corpus ("habeas petition") (Dkt. No. 1). Respondents are Pamela Bondi, United States Attorney General; Kristi Noem, Secretary, United States Department of Homeland Security ("DHS"); DHS; Todd Lyons, Acting Director of Immigration Customs Enforcement; Laura Hermosillo, Acting Seattle Field Office Director, Enforcement and Removal Operations ("ERO"), United States Immigration and Customs Enforcement ("ICE"); ICE; Rodney Scott, Acting Commissioner of Customs and Border Protection; Bruce Scott, Warden, Northwest ICE Processing Center ("NWIPC"). Petitioner, who is presently detained at the Northwest

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 1

Immigration and Custom Enforcement Processing Center (Dkt. No. 1 ¶ 1), seeks[1]: (1) his immediate release from custody (Dkt. No. 1 at 43); (2) an order that he not be re-detained without a pre-deprivation hearing before a neutral magistrate at which Respondents hold the burden of proving by clear and convincing evidence that Petitioner poses a risk of flight and/or a danger to the community (*Id*. at 43–44); (3) in the alternative to immediate release, order Respondents to give Petitioner a second bond hearing before an immigration judge ("IJ"), at which Respondents hold the burden of proving by clear and convincing evidence that Petitioner poses a risk of flight and/or a danger to the community (*Id*. at 43). Having reviewed the Petition, Respondents' Return[2] (Dkt. No. 6), Petitioner's Traverse (Dkt. No. 9), and the relevant record, the Court GRANTS IN PART AND DENIES IN PART Petitioner's petition.

## I.   BACKGROUND

### A.   Petitioner's Immigration Case History

Petitioner is a citizen of Mexico who was brought to the United States in 1999 when he was three years old. Dkt. No. 1 ¶¶ 79, 85. The exact date of Petitioner's entry is unknown, and he entered without being admitted or paroled. Dkt. No. 7 (Dumo Decl.) ¶ 4. He has not left the United States since arriving and attended school in Oregon through high school. Dkt. No. 1 ¶ 85. Petitioner's family currently lives in Oregon. *Id*.

After roughly sixteen years in the United States, Petitioner first came to the attention of ERO on April 15, 2015, when he was booked into Washington County (Oregon) Jail on two allegations of Rape in the Third Degree. Dkt. No. ¶ 5. On September 4, 2015, those allegations resulted in two misdemeanor convictions of Attempted (Statutory) Rape in the Third Degree.

---

[1] Petitioner made various requests with multiple proposed remedies, thus the Court only includes here Petitioner's proposed remedies. Petitioner's various requests and rationales are elaborated later in this Order.

[2] As used in this order, the term "Respondents" includes all Respondents except Respondent Scott. Respondent Scott has not responded to the habeas petition and has not appeared in this case.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 2

Dkt. No. 1 ¶ 86; *see also* Dkt. No. 1-1 (Petitioner's Exhibit List) at 120, 124 (guilty plea paperwork and judgment reflecting Petitioner's Attempted Rape Third Degree convictions).

On March 8, 2016, ERO arrested Petitioner and served him a Notice to Appear ("NTA") alleging that he is inadmissible pursuant to section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). Dkt. No. 1-1 at 6 (Notice to Appear). That same day, a DHS official determined Petitioner not be detained, and Petitioner was released on an Order of Recognizance ("OREC") under conditions including participation in the Intensive Supervision Program ("ISAP"). Dkt. No. 8-3 (OREC). In accordance with his OREC, Petitioner reported in person to DHS for several years Dkt. No. 1-1 at 13 (I-220A Reporting Form). Petitioner provides proof of his I-220A Reporting sheet, which shows the dates he reported, the various officers who signed off on the check-ins, and Petitioner's next report dates. *See id*. On February 13, 2019, DHS notified Petitioner he no longer needed to report in person. *See* Dkt. No. 1 ¶¶ 14, 30; Dkt. No. 1-1 at 13. Between February 13, 2019, and April 30, 2025, Petitioner was released on a standard OREC that did not require in person reporting. Dkt. No. 1 ¶ 14.

Petitioner was arrested on July 28, 2018, and later charged with felony Assault and misdemeanor Harassment. Dkt. No. 1 ¶ 10; Dkt. No. 1 ¶ 89. While that case was pending, Petitioner was convicted of Contempt of Court on December 7, 2018. Dkt. No. 7 ¶ 12. Petitioner went to trial on the Assault and Harassment charges and was convicted on May 3, 2019, of misdemeanor Harassment, but the felony Assault resulted in a hung jury. Dkt. No. 1 ¶¶ 89–91; *see also* Dkt. No. 1-1 at 141 (judgment reflecting Petitioner's misdemeanor harassment conviction). Subsequently, the Assault charge was refiled as a misdemeanor and Petitioner pled guilty to misdemeanor Assault on June 21, 2019. *Id*. ¶ 91; *see also* Dkt. No. 1-1 at 162 (judgment finding Petitioner convicted of misdemeanor Assault). On February 10, 2020, Petitioner was

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 3

found[3] to have violated a term of his probation because of THC use. Dkt. No. 7 ¶ 14; Dkt. No. 1 ¶ 82.

During routine record checks on April 9, 2025, ERO officers decided that Petitioner should be taken into immigration detention due to his misdemeanor criminal convictions. *Id*. ¶ 15. As such, ERO officers mailed Petitioner a call-in letter dated April 20, 2025, directing him to report to their office on April 30, 2025. Dkt. No. 1-1 at 15 (Call-In Letter). The letter indicated that the reason for the appointment was "mandatory appointment to continue reporting requirements as part of your OREC." *Id*. On April 30, 2025, Petitioner appeared for what he expected to be a routine check-in with ERO, only to be arrested and sent to the NWIPC. *See* Dkt. No. 1-1 ¶ 95. It is undisputed that ERO did not provide Petitioner advance notice or a pre-deprivation hearing prior to detaining Petitioner. *See generally* Dkt. Nos. 1, 6.

Upon Petitioner's request to hold a bond hearing, on July 31, 2025, Petitioner appeared before an IJ for a custody determination. Dkt. No. 7 ¶ 18. At the bond hearing, the IJ determined that she did not have jurisdiction to set bond because Petitioner was subject to mandatory detention under section 235(b)(2)(A) of the INA, and that even if the IJ did have jurisdiction (that is, if Petitioner was detained pursuant to Section 1226(a)), she would deny bond because of her contemporaneous finding that Petitioner posed a danger to the community. Dkt. No. 1-1 at 185–86 (Bond Order of the Immigration Judge); *see also* Dkt. No. 1-1 at 187 (Petitioner's bond denial Appeal Brief) (citing to IJ's Bond Memorandum). On August 14, 2025, Petitioner appeared before the same IJ for his final merits hearing,[4] at which the IJ denied all relief and

---

[3] Respondents describe this finding as a "conviction" (Dkt. No. 6 at 13), but, while an underlying probation violation can be a conviction, a probation violation is not a criminal "conviction" itself but, rather, is a finding that the individual violated the terms of probation.

[4] At this hearing, Petitioner testified about feeling sorry about his criminal history, acknowledged the pain he had caused in the past, and discussed what he had learned from the court-ordered 40-week domestic violence treatment program he had engaged in. Dkt. No. 1 ¶ 96. After Petitioner's testimony, Petitioner's counsel asked the IJ whether

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 4

ordered Petitioner removed to Mexico. Dkt. No. 8-4 (Removal Order of the Immigration Judge) at 2. Petitioner's requests for asylum, withholding of removal under INA section 241(b)(3), withholding of removal under the Convention Against Torture ("CAT"), and deferral of removal under the CAT were all denied. *Id*. Then began Petitioner's appeal process.

On September 2, 2025, Petitioner filed an appeal of the IJ's bond decision to the Board of Immigration Appeals ("BIA"). Dkt. No. 7 ¶ 20. On September 3, 2025, Petitioner filed an appeal of the IJ's removal order to the BIA. *Id*. ¶ 21.

Meanwhile, on September 9, 2025, the IJ issued an Order of the Immigration Judge—Bond Memorandum, detailing the reasons for her bond denial the month before. Dkt. No. 1-1 at 190. In her Bond Memorandum, the IJ found:

> Respondent is a native of citizen of Mexico. He last arrived in the United States without inspection sometime in 1999. He is charged under INA Section 212A(a)(6)(A)(i). Respondent is an applicant for admission and subject to mandatory detention under INA Section 235(b)(2)(A). See Matter of Q.Li 29 I&N Dec. 66 (BIA 2025) and Matter of Yajure Hurtado 29 I&N Dec. 216 (BIA 2025). Alternatively the court finds Respondent failed to meet his burden that he is not a danger based on his convictions for third degree rape, assault/domestic violence, harassment and a probation violation.

*Id*. The IJ's bond hearing finding specified that she believed his assault was a felony and his probation violation was a conviction.[5] Dkt. No. 1 ¶ 80.

On February 20, 2026, the BIA dismissed Petitioner's appeal of the IJ's removal order. *Id*. ¶ 25; *see also* Dkt. No. 9-1 (Petitioner IJ Removal Appeal Exhibits) at 35. Petitioner

---

she considered Petitioner rehabilitated as a result of his domestic violence program. The IJ responded: "I don't find that to be an issue at all Mr. Conry. I really don't. I think he's remorseful. I absolutely believe that he's sorry for what he did and he did all of the things he needs[,] needed to do to correct his behavior." *Id*. ¶ 97. Respondents do not contest this recitation. *See generally* Dkt. No. 6.

[5] Respondents do not provide any facts about Petitioner's bond hearing or the basis for the IJ's denial, nor do they dispute Petitioner's facts. *See generally* Dkt. No. 6.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 5

subsequently filed a Petition for Review to the Ninth Circuit, and the IJ's removal order is stayed pending that appeal. Dkt. No. 7 ¶ 26. Petitioner's bond appeal is still pending with the BIA. Dkt. No. 1 ¶ 14.

**B.    Petitioner's Prior Habeas Petition**

On November 7, 2025, another court in this District issued an order denying a previous petition for a writ of habeas corpus filed by Petitioner during his current detention period. *See Cantero Garcia, et al., v. Wamsley*, No. C25-2092, 2025 WL 3123996, at *1 (W.D. Wash. Nov. 7, 2025). In the *Cantero Garcia* matter, a group of petitioners, including Petitioner, all of whom were detained at NWIPC and had been denied bond on the basis that they were subject to mandatory detention under 8 U.S.C. § 1225(b), argued that they were entitled to consideration of release on bond under 8 U.S.C. § 1226(a). *Id*. The court in *Cantero Garcia* made separate findings—one for Petitioner, and one for all remaining petitioners. For all petitioners other than Petitioner, the court found that mandatory detention under Section 1225 violated the INA, present detention was governed by the discretionary framework of Section 1226(a), and bond hearings were therefor required. *Id*. at 2. As to Petitioner, the court denied habeas relief because the IJ had found a separate basis to deny his bond—that the IJ considered Petitioner a danger to the community. *Id*. Because in *Cantero Garcia* Petitioner only challenged the Section 1225(b) basis of his confinement and not the "dangerousness" basis, the court found that he did not prove by a preponderance of the evidence that his detention was unlawful, as the dangerousness finding was an additional legal basis to detain him. *Id*.

## II.    LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). Habeas petitioners must prove by a preponderance of the evidence that they are entitled to relief, *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 6

2004)—that is, that they are "in custody in violation of the Constitution or laws or treaties of the United States," 28 U.S.C. § 2241(c).

### III.    DISCUSSION

**A.    Request for Habeas Relief**

Petitioner seeks habeas relief, arguing that his detention violates the Administrative Procedures Act, 5 U.S.C. § 706(2)(A), the INA, and DHS regulations (Dkt. No. 1 ¶¶ 101–108), as well as his Due Process rights under the United States Constitution (*Id.* ¶¶ 109–113). For those reasons, Petitioner argues he should be granted habeas relief and immediately released. The Court will address each argument in turn, after briefly discussing Judge Cartwright's denial and discussion of Petitioner's earlier habeas petition and its impact on the Court's review of the present petition.

**1.    Effect of *Cantero Garcia* on the Present Petition**

As a preliminary matter, the Court finds that the petition now before the Court raises distinct issues from the petition previously denied by Judge Cartwright, and the decision in *Cantero Garcia*, 2025 WL 3123996, does not preclude the Court's consideration of the issues Petitioner now raises. In *Cantero Garcia*, Judge Cartwright denied Petitioner's petition specifically because he only challenged one of two bases for his bond denial. Where even success on all his arguments would not entitle Petitioner to habeas relief, he had not alleged that his detention was unlawful "and a writ of habeas corpus [wa]s not available relief at th[at] time." *Id.* at *2.

Here; however, Petitioner challenges *both* the IJ's application of Section 1225(b) to his case *and* her finding of dangerousness. He also mounts both administrative and constitutional challenges to the process by which he was re-detained and challenges his continued detention as unconstitutionally prolonged. Respondents do not identify any lawful basis for Petitioner's

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 7

detention that will remain if his arguments succeed. Therefore, giving full consideration to this fuller petition is consistent with *Cantero Garcia*.

Although Judge Cartwright could not grant Petitioner habeas relief on the record before her in *Cantero Garcia*, her analysis as to Petitioner's co-petitioners in that case, and his position relative to theirs, is relevant. In *Cantero Garcia*, Respondents argued that Petitioner is subject to mandatory detention under Section 1225(b)(2), a position consistent with (but not explicit in) their current briefing.[6] Judge Cartwright rejected that position as to the other *Cantero Garcia* petitioners, finding that their mandatory detention under Section 1225(b)(2) was unlawful because they were members of a certified class to whom she had previously granted summary judgment and entered the following declaratory relief:

> The Court declares that Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2). The Court further declares that the Tacoma Immigration Court's practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act.

*Cantero Garcia*, 2025 WL 3123996, at *1 (quoting *Rodriguez Vazquez v. Bostock*, 802 F. Supp. 3d 1297, 1333 (W.D. Wash. 2025)).

As for Petitioner, Judge Cartwright suggested that he would also be part of the Bond Denial class if not for the IJ's alternative dangerousness finding pursuant to 1226(a) (and would be a class member should he prevail in his bond appeal). *Cantero Garcia*, 2025 WL 3123996, at

---

[6] Over a quarter of Respondents' twenty-page return memorandum is dedicated to their interpretation of the INA's detention regime for noncitizens in ongoing proceedings. *See* Dkt. No. 6 at 7–12. Most of this is dedicated to a discussion of 28 U.S.C. § 1225(b)(1) and (b)(2). *See id.* However, Respondents also acknowledge that "[u]nder Section 1226(a), DHS may, in its discretion, detain a noncitizen during his removal proceedings, release him on bond, or release him on conditional parole." *Id.* at 11. Despite the apparent importance Respondents assign to these legal distinctions, they do not apply them to the facts of Petitioner's case, and at no point in their brief do they state whether they consider Petitioner to be detained pursuant to Section 1225(b)(1), Section 1225(b)(2), or Section 1226(a). *See generally* Dkt. No. 6.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 8

*2 ("The relief [Petitioner K.G.M.Q.] seeks essentially asks the Court to restate that the declaratory judgment in *Rodriguez Vazquez* applies to him if he overturns the other basis for his detention through his BIA appeal. But that ruling is already contained within the *Rodriguez Vazquez* order and judgment itself."). In other words, for the reasons articulated in *Rodriguez Vazquez*, Petitioner is not detainable under Section 1225(b)(2) and can only be detained for immigration proceedings pursuant to Section 1226(a). *See Rodriguez Vazquez*, 802 F. Supp. 3d at 1336. The Court adopts Judge Cartwright's reasoning in its entirety and finds Petitioner cannot be detained under any provision of Section 1225(b) for the reasons articulated in *Cantero Garcia* and *Rodriguez Vazquez*.

### 2. Claims for Habeas Relief

#### a. Count I: Violation of the Administrative Procedures Act

Petitioner argues that his re-detention was "arbitrary and capricious and violated his right to liberty without due process of law." Dkt. No. 1 at 10. He attempts to support this position with extensive argument his re-detention was in violation of the Administrative Procedures Act ("APA") because ICE failed to follow its own regulations when it re-detained Petitioner. *See, e.g.*, Dkt. No. 1 ¶¶ 32–33, 38–49. Although Respondents do not respond to the APA claims, the problem with Petitioner's argument is that the federal regulation that he claims was violated—8 C.F.R. § 241.4—does not apply to him. Section 241.4 applies to noncitizens "ordered removed." *See* § 241.4(a). When Petitioner was re-detained, he was released on an OREC and had not been ordered removed. Dkt. No. 8-3. Even now, this provision would not apply to Petitioner because his removal order is on appeal and is not final.

Therefore, Petitioner's APA claim has no merit, and the Court denies relief on this ground.

### b.    Count II: Violation of Due Process

As an alternative to release for the alleged APA violation, Petitioner argues that he should be released because his due process rights were violated. Petitioner advances several theories of due process violations, including (1) that his re-detention violated due process (Dkt. No. 1 ¶ 109); (2) that his custody has become unconstitutionally prolonged (*id.* ¶ 110); and (3) that his bond hearing was flawed because the IJ erred as a matter of law when it determined he was subject to mandatory detention, and, in the alternative, posed a danger to the community (*id.* ¶¶ 110–112). The Court considers each of these theories in turn.

### (1)    Adequacy of Process in Petitioner's Re-Detention

The Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law[.]" U.S. Const. Amend. V. The right to due process extends to "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)); *see also P.T. v. Hermosillo,* No. C25-2249, 2025 WL 3294988, at *2 n.1 (W.D. Wash. Nov. 26, 2025) ("In determining the lawfulness of Petitioner's detention, the Court will focus not on the Government's claimed authority to detain, but the process by which Petitioner was detained.")).

In *Mathews*, the Supreme Court established a three-part balancing test determining whether an administrative procedure provides the process constitutionally due:

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 10

First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335.

In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206–07 (9th Cir. 2022). District courts in this Circuit have applied the *Mathews* test in similar circumstances since then. *See, e.g.*, *Torres v. Hermosillo*, No. C25-2687, 2026 WL 145715, at *6 (W.D. Wash. Jan. 20, 2026); *Sira-Hurtado v. Hermosillo*, No. C25-2173, 2025 WL 3294986, at *2 (W.D. Wash. Nov. 26, 2025); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025). Consistent with persuasive authority, the Court will evaluate Petitioner's claims under *Mathews*, considering each factor in turn to determine whether Petitioner's re-detention comports with constitutional due process requirements.

### (a)    First *Mathews* Factor: Petitioner Has a Considerable Private Interest in His Liberty

As to the first *Mathews* factor, Petitioner has a considerable private interest in his liberty. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992); *see also Zadvydas*, 533 U.S. at 696 (a noncitizen has a liberty interest "strong enough" to challenge "indefinite and potentially permanent" immigration detention). The Ninth Circuit has found that "a detained person's liberty interest is substantial." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1199 (9th Cir. 2022). Petitioner, unquestionably, has a strong interest in his own

liberty. In fact, Respondents even admit the "weighty" liberty interest implicated by their detention of noncitizens. Dkt. No. 6 at 16.

Petitioner's liberty interest was at its apex when he was released on an OREC—an affirmative grant of liberty on which he could reasonably rely, albeit with conditions and subject to the outcome in his removal case. "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. Mar. 3, 2025) Petitioner has relied on that liberty interest while living in the community for nine years, reporting in person to ISAP appointments and immigration court hearings, and complying with other terms of his OREC.

To be sure, Petitioner's liberty interest was diminished when, in July 2018, he violated the terms of his OREC with the conduct that resulted in his misdemeanor assault conviction. But even after Petitioner was charged with, and convicted of, new crimes, a DHS official made the decision not to detain him. *See supra* Section I.A. Indeed, it is undisputed that DHS notified him on February 13, 2019, that he no longer needed to report in person as part of his OREC, and that he was under a standard OREC until his re-detention on April 30, 2025. Dkt. No. 1 ¶¶ 14, 30. Even after criminal charges and convictions, Petitioner continued to attend immigration hearings, without being arrested, after his ISAP ended—on February 22, 2019, May 10, 2019, August 23, 2019, November 27, 2023, May 29, 2024, and March 5, 2025. *Id*. ¶ 31. DHS's decision not to revoke Petitioner's OREC upon his conviction (and DHS's subsequent inaction for the next six years) reasonably led Petitioner to understand that his OREC was not being revoked and to continue to rely on his liberty interest in full force. Respondents do not contest this consistent reporting and attendance from Petitioner. Petitioner's robust liberty interest—an interest that was bolstered by Respondents' actions and on which Petitioner relied on while living in the

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 12

community for nine years—entitles him to Due Process, which Respondents have failed to give. Therefore, the first *Mathews* factor weighs in Petitioner's favor.

(b)      **Second *Mathews* Factor: The Risk of Erroneous Deprivation of Liberty is High**

As to the second *Mathews* factor, the risk of erroneous deprivation of liberty is high. Petitioner was released on his own recognizance, and after repeatedly appearing for his in-person appointments, was told he no longer had to continue to report in person. There is nothing in the record demonstrating that Petitioner was provided advanced notice of his re-detention or the factual basis for it. In fact, it instead appears that DHS misrepresented to Petitioner the purpose of the appointment at which they detained him. *See* Dkt. No. 1-1 at 15. It is undisputed that, in advance of this appointment, DHS had already decided that Petitioner was in violation of his OREC because of his criminal convictions. DHS then sent Petitioner a call-in letter on April 20, 2025, directing him to report to their office on April 30, 2025. *Id*. The letter indicated that the reason for the appointment was "mandatory appointment to continue reporting requirements as part of your OREC." *Id*. DHS's phrasing indicates that the reason for the meeting was to discuss the resumption of his reporting requirements, not that he was in violation because of his criminal convictions and thus needed to discuss the issue with DHS officers. Respondents offer no explanation, nor response to such behavior, and instead simply assert that Petitioner's criminal history warranted revocation. Dkt. No. 6 at 16. Accordingly, the Court finds that the risk of erroneous deprivation of liberty is high. *See Doe*, 787 F. Supp. 3d at 1094 ("[G]iven that Petitioner was previously found to not be a danger or risk of flight . . . the risk of erroneous deprivation remains high.").

As other courts in this Circuit have found, a post-deprivation bond hearing under these circumstances "cannot serve as an adequate procedural safeguard because it is after the fact and

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 13

cannot prevent an erroneous deprivation of liberty." *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d. 1316, 1324 (W.D. Wash. 2025) (citing *Domingo v. Kaiser*, No. C25-5893, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.")). Therefore, the second *Mathews* factor weighs in Petitioner's favor.

### (c)  Third *Mathews* Factor: Respondents' Interest in Re-Detention Without Hearing Is Minimal

As to the third *Mathews* factor, Respondents' interest in re-detention without a hearing is minimal.

Respondents argue that there is a "heightened government interest in the immigration detention context" and in preventing noncitizens "from remaining in the United States in violation of our law." Dkt. No. 6 at 16 (citation modified). But those interests are not threatened if a pre-deprivation hearing is required. The fact that Petitioner complied with in-person reporting obligations for years, along with the fact that Respondents waited until six years after his OREC violation to detain him undermines any suggestion that Respondents' interest must be satisfied immediately.

Further, Respondents do not (and could not) argue that the cost of procedural safeguards would be insurmountable As Petitioner argues in reply to Respondents' *Mathews* points, "Immigration bond hearings are routine and are clearly embedded into the system, expected, and of no great inconvenience to the government." Dkt. No. 9 at 5. While providing Petitioner with a hearing before re-detaining him would naturally have required some expense of money and time, those costs are outweighed by the risk of erroneous deprivation of the liberty interest at stake. *See, e.g., Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019) ("If the

government wishes to re-arrest Ortega at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low.").

\* \* \*

Much of Respondents' *Mathews* argument (not clearly connected to any of the three factors), relies on the analysis on two cases, *Zinermon v. Burch*, 494 U.S. 113, 127 (1990), and *Martinez Hernandez v. Andrews*, No. C25-1035, 2025 WL 2495767, at \*1 (E.D. Cal. Aug. 28, 2025). The Court previously rejected Respondents' interpretation of these cases, *see Sarwari v. Wamsley*, No. C26-121, 2026 WL 279968, at \*4–5, and once again does so, incorporating the reasoning and analysis from *Sarwari* in this case. *Id.*

In addition to the reasons stated in *Sarwari*, Respondents suggest that under *Martinez Hernandez*, a prompt post-deprivation hearing would be allowed in cases where "'notice and a pre-deprivation hearing would have been impracticable and/or would have motivated his flight.'" Dkt. No. 6 at 17 (quoting *Martinez Hernandez,* 2025 WL 2495767, at \*11–12). The court in *Martinez Hernandez* did "recognize[ ] that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate." *Martinez Hernandez,* 2025 WL 2495767, at \*11. But here, Respondents cannot reasonably argue that Petitioner's OREC violations *urgently* required arrest. Petitioner reported in person to DHS and to immigration court several times *after* he'd been convicted of criminal offenses, and DHS waited until five years after his probation violation (*see* Dkt. No. 1 ¶ 99), and roughly six years after his most recent conviction (*see id*. ¶ 91), to detain him. Further negating any need to urgently detain him, DHS determined in 2019 that Petitioner did not even need to keep participating in ISAP, apparently due to his compliance record *after* the conviction.

Moreover, even if a "prompt post-deprivation hearing" was in line with due process, which this Court finds it is not, Petitioner's hearing was not "prompt," within the meaning of

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 15

*Martinez Hernandez*, as Petitioner's bond hearing occurred three months after he was arrested.[7] *See* Dkt. No. 6 at 14. Even if *Martinez Hernandez* applied, Respondents cannot reasonably argue that Petitioner was actually provided the prompt, post-deprivation process to which it refers. Notably, Respondents admit that this hearing occurred upon *Petitioner's* request, and there is no evidence that Respondents would have provided a hearing of their own accord. *See* Dkt. No. 7 ¶ 18.

*    *    *

In sum, this Court finds that all three *Mathews* factors weigh in Petitioner's favor. Therefore, his re-detention without a pre-detention hearing violated his rights under the Fifth Amendment to the United States Constitution.

### (2)    Whether Petitioner's Detention Is Unconstitutionally Prolonged

Petitioner twice briefly mentions that his detention is "prolonged" without providing any legal analysis or argument, relying on a passing reference to *Zadvydas v. Davis*. *See* Dkt. No. 1 ¶¶ 67, 109. In his traverse, Petitioner acknowledge that *Zadvydas*, which applies to detainees with final orders of removal, does not apply here (Dkt. No. 9 at 2) and provides an analysis under *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1117–118 (W.D. Wash. 2019), the test provided by Respondents for prolonged detention of a noncitizen who is detained pursuant to 8 U.S.C. § 1225. *See* Dkt. No. 9 at 8–11.

As the Parties acknowledge, *Banda* provides a set of criteria courts in this Circuit use in determining whether a noncitizen who is detained pursuant to 8 U.S.C. § 1225(b), and who has never been provided a hearing at which the Section 1226(a) factors are considered, is entitled to

---

[7] In *Martinez Hernandez*, the court issued its order 20 days after the petitioner's detention and ordered respondents to provide a bond hearing within ten days of the order. *See Martinez Hernandez*, 2025 WL 2495767, at *4, 14.

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 16

such a hearing. *See Banda*, 385 F. Supp. 3d at 1106. Petitioner had a bond hearing several months after his detention. Further, Petitioner is not detained under Section 1225(b)—as he himself argues, and as this Court finds. *See supra* Section III.A.1. Therefore, *Banda* also does not apply, and the Court need not conduct a *Banda* analysis.

### (3)    Whether Petitioner's Prior Bond Hearing Created a Lawful Basis for Detention

Courts in this District have generally found that re-detention, without notice and an opportunity to be heard, of a noncitizen who has been released into the community on an OREC is a due process violation. *See, e.g.*, *Ortiz v. Hermosillo*, No. C26-384, 2026 WL 607672, at *5 (W.D. Wash. Mar. 4, 2026) (finding that re-detention without a pre-detention hearing violated petitioner's rights under the Fifth Amendment to the United States Constitution); *G.S. v. Hermosillo*, No. C25-2704, 2026 WL 179962, at *3 (W.D. Wash. Jan. 22, 2026) (re-detention without notice or opportunity to be heard violated due process); *Petrov v. Hermosillo*, C25-2647, 2026 WL 98761, at *4 (W.D. Wash. Jan. 14, 2026) (same); *Shinwari v. Hermosillo*, No. C26-9, 2026 WL 262605, at *4 (W.D. Wash. Jan. 30, 2026) (same). However, "where a noncitizen was initially re-detained and subject to mandatory detention without advance notice, but later received a bond hearing with an alternative discretionary finding—courts in this District have not ordered unconditional release . . . ." *Singh v. Noem*, No. C26-304, 2026 WL 482389, at *3 (W.D. Wash. Feb. 20, 2026). This is because, "irrespective of other alleged legal errors, petitioners are not entitled to habeas relief when an IJ finds a separate basis for their detention *and that basis is unchallenged*." *Id.* (emphasis added) (collecting cases). However, in this case, Petitioner *does* affirmatively challenge the IJ's alternative detention finding. Dkt. No. ¶ 74. Accordingly, the Court turns to Petitioner's claims that the IJ's bond decision was wrong as a matter of law.

At Petitioner's bond hearing, the Immigration Judge found that (1) she did not have jurisdiction because Petitioner was subject to mandatory detention; and (2) even if she had jurisdiction, Petitioner would be denied bond because Petitioner is a danger to the community. Dkt. No. 1-1 at 185. Petitioner argues that that the IJ erred as a matter of law when the IJ found that Petitioner was subject to mandatory detention and that Petitioner was a danger to the community. Dkt. No. 1 at 43; *Id*. ¶ 54. In response, Respondents address this argument with a fleeting response at the end of their brief, stating, "[s]ince this is not properly within the scope of this habeas action or the jurisdiction of this Court, this request should be denied." Dkt. No. 6 at 20. No further argument or analysis on the issue is provided by Respondents.

Although federal courts generally lack jurisdiction to review discretionary bond determinations, *see* 8 U.S.C. § 1226(e), Section 1226(e) does not preclude judicial review of constitutional claims or questions of law. *Martinez v. Clark*, 124 F.4th 775, 781–82 (9th Cir. 2024). A district court has jurisdiction to review an immigration judge's denial of bond when the bond denial is legally erroneous or unconstitutional. *Barrios Osorio v. Bondi*, No. C26-317, 2026 WL 607765, at *2 (W.D. Wash. Mar. 4, 2026). In this context, mixed questions of law and fact, even if primarily factual, are treated as questions of law. *Martinez*, 124 F.4th at 782. Here, Petitioner alleges that "the IJ's decision denying bond is wrong as a matter of law" (Dkt. No. 1 ¶ 74), and the Court has jurisdiction over this claim. Respondents' single sentence response does not address this. As such, the Court will review both the IJ's mandatory detention finding and the IJ's dangerousness finding.

### (a)    The IJ's Mandatory Detention Determination

The IJ's determination that it lacked jurisdiction to order bond under Section 1225 was legally erroneous because Petitioner is detained pursuant to Section 1226(a). *See supra* III.A.1; *see also Barrios Osorio*, 2026 WL 607765, at *3 (finding that IJ committed legal error where IJ

denied bond due to petitioner being subject to mandatory detention under 1225, and instead finding that petitioner was subject to 1226(a)). This erroneous finding does not provide a lawful basis for Petitioner's detention.

### (b)    The IJ's Dangerousness Determination

An immigration judge's application of the "dangerousness" standard at a bond hearing is a reviewable mixed question of law and fact. *Martinez v. Clark*, 124 F.4th at 783. This is because "[e]ven though what constitutes 'dangerousness' is malleable and involves agency discretion, . . . this is still a legal standard so long as federal courts can 'assess whether an IJ correctly applied the statutory standard to a given set of facts.'" *Id*. (citation modified). An IJ's "dangerousness" determination is reviewed for abuse of discretion. *Id*. at 784. "Under an abuse of discretion standard, '[a district court] cannot reweigh evidence . . . [but] can [only] determine whether the BIA applied the correct legal standard.'" *Id*. at 785 (citation modified).

When determining whether a noncitizen is a danger to the community or risk of flight, an IJ weighs nine factors, pursuant to BIA precedent. *See In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006); *see also Martinez*, 124 F.4th at 783. The nine factors that an IJ "may" consider "include any or all of the following;"

> (1) whether the [noncitizen] has a fixed address in the United States; (2) the [noncitizen]'s length of residence in the United States; (3) the [noncitizen]'s family ties in the United States, and whether they may entitle the [noncitizen] to reside permanently in the United States in the future; (4) the [noncitizen]'s employment history; (5) the [noncitizen]'s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from authorities; and (9) the [noncitizen]'s manner of entry to the United States.

*Martinez*, 124 F.4th at 783 (citing *In re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)).

"The *Guerra* factor most pertinent to assessing dangerousness is the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *Id*. (citation modified). These factors "grant an IJ broad discretion to weigh the listed factors and add any factors not mentioned or discount those that are less probative." *Id*. at 783–84.

The record before the Court leads it to believe the IJ did not "correctly appl[y] the statutory standard to a given set of facts." *See Martinez*, 124 F.4th at 783. Within the current facts before the Court, it appears the IJ only referred to factor six: "the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses." *See* Dkt. No. 1-1 at 187. The IJ's dangerousness finding is a reviewable mixed question of law and fact, and the Court cannot ignore the fact that the IJ completely misconstrued—if unintentionally—several facts that form the basis of the legal conclusion. The IJ based her finding in part on the fact that Petitioner's assault conviction was a felony, when it was actually a misdemeanor. *See* Dkt. No. 1 ¶ 80; *see also* Dkt. No. 1-1 at 162 (judgment finding Petitioner convicted of misdemeanor Assault). The IJ further based her finding in part on the belief that his misdemeanor attempted (statutory) rape convictions were not attempts, but full-fledged (statutory) rape convictions. *See* Dkt. No. 1-1 at 187; *see also id*. at 120, 124 (guilty plea paperwork showing misdemeanor Attempted Rape Third Degree convictions and judgement paperwork showing Attempted Rape Third Degree convictions). Finally, the IJ based her finding in part on the belief that Petitioner was "convicted" of a probation violation. Dkt. No. 1 ¶ 80. Although a probation violation can come in various forms, depending on the terms of probation (*e.g.*, do not commit new law violations, do not use alcohol or non-prescribed medication, appear for all court hearings, etc.), committing a probation violation, does not necessarily mean the individual has been convicted of a criminal offense.

Here, Petitioner's probation violation was not a criminal conviction, but a violation of probation terms for using THC (which, notably is also non-violent) (Dkt. No. 1 ¶ 82). There cannot be a correct application of a standard to a set of facts when the facts relied on are incorrect. Furthermore, the IJ could not have correctly applied the statutory standard to the set of facts because part of the standard the IJ used considers "seriousness of the offenses." *See Martinez*, 124 F.4th at 783. By misstating that Petitioner's assault was a felony, rather than a misdemeanor, and by misstating that Petitioner's misdemeanor Attempted (Statutory) Rape Third Degree convictions were not attempts, but completed (statutory) Rape Third Degree convictions, the IJ mistakenly inflated the "seriousness" of the offenses she considered. Therefore, the Court finds that the IJ abused her discretion in her consideration of the sixth *Guerra* factor which, in turn, resulted in a legal error in the dangerousness finding underlying the detention decision.

Accordingly, the IJ's dangerousness determination was legally erroneous and did not provide a lawful basis for Petitioner's detention.

**B.      Legal Remedy**

In sum, the Court finds that Petitioner's due process rights were violated when he was re-detained without notice or a pre-deprivation hearing. Detention under these circumstances is unlawful from its inception and typically requires immediate release. *See, e.g.*, *Ortiz*, 2026 WL 607672, at *5; *G.S.*, 2026 WL 179962, at *3. Although an immigration judge's later finding that a noncitizen should remain detained will create an additional basis for detention (rendering detention lawful and a habeas remedy unavailable), *see Singh,* 2026 WL 482389, at *3, that only happens if the IJ's finding is valid as a matter of law. Here, the IJ found two bases for Petitioner's detention, but neither finding was legally sound. First, the IJ found she did not have jurisdiction to order bond because Petitioner was subject to mandatory detention; this Court finds he is not. In the alternative, the IJ found that Petitioner should remain detained as a danger to the

community; the Court finds the IJ's consideration of the facts before her was legally erroneous. Accordingly, this Court finds that Petitioner is still positioned as he was before his bond hearing—deprived of liberty without due process, with no lawful basis for his detention. Accordingly, immediate release is required.

**C.      Request for Injunctive Relief**

At the very end of Petitioner's petition, he requests that the Court "Order that Petitioner not be re-detained without a pre-deprivation hearing before a neutral magistrate at which it would be the burden of the government to prove by 'clear and convincing' evidence that he is either a flight risk and/or a danger to society." Dkt. No. 1 at 43–44. This is a request seeking injunctive relief, yet Petitioner does not provide legal support for such a request nor even mention the phrase "permanent injunction." *See, e.g.*, *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003)) (finding that a party seeking a permanent injunction "must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" (quoting *United States v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953))). Therefore, Petitioner's request for injunctive relief is DENIED.

**D.         Request for Attorney Fees and Costs**

Petitioner may file a fee petition as set forth in the Equal Access to Justice Act, 28 U.S.C. § 2412.

### IV.   CONCLUSION

Accordingly, Petitioner's Petition for Writ of Habeas Corpus (Dkt. No. 1) is GRANTED IN PART and DENIED IN PART. It is hereby ORDERED:

(1)      Petitioner's request for an order requiring his immediate release is GRANTED.

(a) Respondents SHALL release Petitioner from detention **within 24 hours of this Order**, pursuant to the conditions in his preexisting Order of Release.

(2) Within 48 hours of this Order, Respondents SHALL provide the Court with a declaration confirming that Petitioner has been released from custody and informing the Court of the date and time of his release.

(3) Petitioner's request that he not be re-detained without a pre-deprivation hearing before a neutral magistrate at which it would be the burden of the government to prove by clear and convincing evidence that he is either a flight risk and/or a danger to society is DENIED.

Dated this 9th day of April, 2026.

Tana Lin
United States District Judge

ORDER ON PETITION FOR WRIT OF HABEAS CORPUS – 23